OPINION



No. 04-03-00800-CV



CITY OF LAREDO and Agustin Dovalina III,


Appellants



v.



David LEAL,


Appellee



From the 111th Judicial District Court, Webb County, Texas


Trial Court Nos. 2001-CVQ-000765-D2 & 2003-CVQ-001720-D2


Honorable Raul Vasquez, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: December 29, 2004


DISMISSED FOR WANT OF JURISDICTION IN PART; REVERSED AND RENDERED IN
PART 

 The City of Laredo and its police chief, Agustin Dovalina, appeal the trial court's summary
judgment in favor of David Leal, a lieutenant in the Laredo Police Department. We hold the hearing
examiner who heard Leal's appeal had both the jurisdiction and the authority to reduce Leal's
indefinite suspension to a temporary 644-day suspension without pay. We therefore reverse this
aspect of the trial court's judgment and render a take-nothing judgment in favor of the City and
Dovalina. We also hold the trial court erred in denying Dovalina's motion for summary judgment on
Leal's substantive and procedural due process claims on the ground of qualified immunity.
Accordingly, we also reverse this aspect of the trial court's judgment and render a take-nothing
judgment in favor of Dovalina.

Factual and Procedural Background


 On October 21, 2000, Lieutenant David Leal's son, David Leal II ("D.J."), attended a party
where he was attacked and beaten. Soon thereafter, a suspect in D.J.'s assault case, Eduardo Munoz,
filed a complaint ("the Munoz Complaint") alleging that, on October 28, 2000, he was harassed by
Lieutenant Leal. Other complaints, also alleging harassment and interference with the investigation,
were filed against Leal by members of the Laredo Police Department, Juan Arias, and Sami Alasi
("the Arias-Alasi Complaint"). 

 Both the Munoz and the Arias-Alasi Complaints were investigated by the Laredo Police
Department's Internal Affairs Division under the direction of Lieutenant Gilberto Navarro. Navarro
assigned the investigation of the Munoz Complaint to Officer Gilberto Magaña, Jr. and the
investigation of the Arias-Alasi Complaint to Officer Sergio Moreno. Magaña and Moreno each gave
Leal a copy of the complaint under investigation, informed him of his right to union representation
and a lawyer, asked him to answer written questions, and interviewed him. In neither investigation
did Leal avail himself of his right to a union representative or a lawyer. After reviewing the reports
emanating from these investigations, Assistant Chief Eliodoro Granados forwarded the complaints
to two Disciplinary Review Boards.

 Leal appeared before both Disciplinary Review Boards, answered the board members'
questions and, for the most part, gave his side of the story. In the first Disciplinary Review Board,
on March 20, 2001, Leal was represented by Luis Martinez, the vice-president of the Laredo Police
Officers Association. In the second, on April 9, 2001, Leal was represented by the Association's
president, Octaviano Rodriguez. With regard to the Munoz Complaint, the Disciplinary Review
Board recommended that Leal be indefinitely suspended. With regard to the Alasi-Arias Complaint,
the Board recommended that Leal be demoted to a non-supervisory position. The Disciplinary
Review Boards' recommendations were ultimately forwarded to Police Chief Agustin Dovalina III.
If Dovalina was to act on the Board's recommendations, he was required to do so by April 25, 2001.
See Tex. Loc. Gov't Code Ann. § 143.052(h) (Vernon 1999). However, from the time the second
Disciplinary Review Board concluded on April 9 through April 25, Leal was on either sick leave or
annual leave. (1) Accordingly, Dovalina directed his efforts towards serving Leal at his home.

 On April 23, 2001, Magaña and a patrolman saw Leal water plants outside his home and then
go inside. Later that day, however, after Dovalina had signed a notice of an April 25, 2001 pre-termination hearing and directed Lieutenant Navarro to deliver the notice to Leal, Navarro and
Magaña received no answer when they called Leal on his cell phone. When Moreno called Leal's
home phone, he was told by D.J. that Leal was out-of-town; D.J. said he did not know when his
father would return. That afternoon, Navarro again went to Leal's home to deliver the notice of the
pre-termination hearing; this time, Navarro was told by Leal's wife Vanessa that Leal was out-of-town at a doctor's appointment. 

 On April 24, Navarro tried again, watching Leal's home from 6:00 a.m. until 11:00 a.m.; but
this time he saw no sign of Leal. Later that day Dovalina signed a letter indefinitely suspending Leal
from his position as a lieutenant for violating Rules 2(6), 2(8), and 2(12) of the City of Laredo Fire
Fighters' and Police Officers' Civil Service Commission Rules and Regulations; sections 10.11(A)-(B), 10.13(B), 10.14(C), and 10.34(A) of the Laredo Police Department's Policies and Procedures;
and sections 7.01 and 7.02 of the Laredo Police Department General Orders Manual. After being
ordered to serve Dovalina's April 24 letter of suspension on Leal, Navarro returned to Leal's home
and knocked on the door for approximately five minutes; but no one answered. Accordingly, Navarro
taped a copy of the letter to Leal's front door and put another copy in the mailbox. When Navarro
returned at approximately 6:30 that evening, the letter was still taped to Leal's front door. D.J., who
was in the driveway, again said his father was out-of-town. D.J. refused to accept the letter on his
father's behalf. 

 As Leal, his wife, and his son later admitted, Leal was at home, sick in bed, on both April 23
and 24. According to Leal, he did not learn of his suspension until April 26, when he read a local
newspaper article, and did not receive the letter of suspension until May 4, when he was handed an
envelope containing the letter and his paycheck. Leal could not explain how, if he did not see the
letter of suspension until April 26, his first attorney was able on April 30 to file Leal's appeal detailing
the same rules he was alleged to have violated in Dovalina's April 24 letter of suspension. 

 Pursuant to section 143.057 of the Texas Local Government Code and the Collective
Bargaining Agreement between the City and the Laredo Police Association, Leal appealed his
indefinite suspension to an independent third party hearing examiner. After an eighteen-day hearing,
the hearing examiner issued a nineteen-page report. In this report, the hearing examiner found that
Dovalina "took reasonable steps to fulfill [the Local Government Code's service] requirements within
the legal time frame"; but "Leal's family prevented Department representatives from serving the letter
of indefinite suspension." In light of these findings, the hearing examiner concluded that "[t]he City
of Laredo did not violate procedural and notification requirements of the Local Government Code
in issuing Police Lieutenant David Leal an indefinite suspension on April 24, 2001." 

 The hearing examiner also concluded that only the allegations made in Alasi's complaint were
supported by sufficient evidence. But this conduct represented "serious infractions" and
"demonstrated a lack of good moral character and was prejudicial to good order." In particular, the
hearing examiner found that "Leal violated applicable sections of the City of Laredo Police
Department's Rules and Regulations, the City of Laredo's Policies and Procedures, the Laredo Police
Department's General Orders, the Local Civil Service Rules of the City of Laredo, and the Texas
Local Government Code." Nonetheless, the hearing examiner concluded that "[t]ermination is too
severe for the violations [Leal] committed"; and "[t]he discipline appropriate for his violations is a
suspension from April 24, 2001 to February 16, 2003" (644 days) and restoration of Leal to his
former position. "Considering the continuing fallout to the Department and the general public
stemming from [Leal's] actions," the hearing examiner concluded "it is not appropriate to award back
pay." 

 Dissatisfied with the hearing examiner's decision, Leal filed this suit in district court,
challenging the hearing examiner's jurisdiction and authority to suspend him without pay or benefits
for more than thirty days and seeking to recover damages from the City and Dovalina under 42
U.S.C.A. § 1983 for violations of his Fifth and Fourteenth Amendment rights to substantive and
procedural due process. Leal moved for summary judgment on all but his substantive due process
claim. In their response to Leal's motion and in their own motion for summary judgment, the City and
Dovalina asserted that the hearing examiner was authorized to reduce Leal's indefinite suspension
to a 644-day suspension; Dovalina was entitled to qualified immunity; and both the City and Dovalina
were entitled to summary judgment on the merits of Leal's substantive and procedural due process
claims. The trial court denied the City's and Dovalina's motion and granted Leal's motion in part,
ruling that the hearing examiner was without jurisdiction and authority to reduce Leal's indefinite
suspension to a 644-day suspension without pay or benefits, granting Leal's motion for partial
summary judgment on his procedural due process claim, and setting a jury trial on damages. The City
and Dovalina appealed.

Standard of Review


 We review a summary judgment de novo. Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003). Accordingly, we will uphold a traditional summary judgment only if
the summary judgment record establishes the absence of a genuine issue of material fact and that the
movant is entitled to judgment as a matter of law on a ground set forth in the motion. Tex. R. Civ.
P. 166a(c). We view the evidence in the light most favorable to the respondent and disregard all
contrary evidence and inferences. Provident Life, 128 S.W.3d at 215-216. "When both sides move
for summary judgment and the trial court grants one motion and denies the other, the reviewing court
should review both sides' summary judgment evidence and determine all questions presented[,] ...
render[ing] the judgment that the trial court should have rendered." FM Props. Operating Co. v. City
of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Hearing Examiner's Jurisdiction and Authority


 The City and Dovalina first argue the trial court erred in denying their motion for summary
judgment and in granting Leal's motion on his claim that the hearing examiner lacked the jurisdiction
and authority to reduce Leal's indefinite suspension to a 644-day suspension without pay. (2) We agree.

 The procedure by which a police officer may appeal a disciplinary suspension is set forth in
the Civil Service Act. See Tex. Local Gov't Code Ann. § 143.001, et seq. (Vernon 1999). Under
the Act, "an officer may appeal his suspension either to the civil service commission or to an
independent third-party hearing examiner." City of San Antonio v. Longoria, No. 04-04-00063-CV,
2004 WL 2098074, at *1 (Tex. App.-San Antonio Sept. 22, 2004, no pet.) (citing Tex. Local
Gov't Code Ann. § 143.057(a)). An independent third-party hearing examiner has the same duties
and powers as the civil service commission. Longoria, 2004 WL 2098074, at *1 (citing Tex. Local
Gov't Code Ann. § 143.057(f)). "However, unlike the commission's decision, the decision of the
hearing examiner is final and binding on all parties." Longoria, 2004 WL 2098074, at *1 (citing Tex.
Local Gov't Code Ann. § 143.057(c)). Accordingly, "a district court may hear an appeal of a
hearing examiner's award only on the grounds that: (1) the hearing examiner was without jurisdiction;
(2) the hearing examiner exceeded his jurisdiction; or (3) the order was procured by fraud, collusion,
or other unlawful means." Longoria, 2004 WL 2098074, at *1 (citing Tex. Local Gov't Code Ann.
§ 143.057(j)). This "standard has been interpreted as an 'abuse of authority' standard.'" Longoria,
2004 WL 2098074, at *2 (citing Nuchia v. Tippy, 973 S.W.2d 782, 786 (Tex. App.-Tyler 1998, no
pet.)). "An abuse of authority occurs when a decision is so arbitrary and unreasonable that it amounts
to a clear and prejudicial error of law." Longoria, 2004 WL 2098074, at *2 (citing City of Carrollton
Civil Serv. Comm'n v. Peters, 843 S.W.2d 186, 188 (Tex. App.-Dallas 1992, writ denied)).

 Section 143.053(f) of the Texas Local Government Code provides that, "[i]f the commission
finds that the period of disciplinary suspension should be reduced, the commission may order a
reduction in the period of suspension." Tex. Local Gov't Code Ann. § 153.053(f) (Vernon Supp.
2004). So far as we have been able to determine, this authority is not limited by any statutory
provision; and it has not been limited by any court decision. Indeed, as Dovalina and the City point
out, several courts have affirmed commission decisions reducing indefinite suspensions to temporary
suspensions in excess of thirty days. See Firemen's & Policemen's Civil Serv. Comm'n v. Hamman,
404 S.W.2d 308, 313 (Tex. 1966) (affirming commission's decision reducing indefinite suspension
to temporary six-month suspension without pay); Kirkwood v. City of Corsicana, 871 S.W.2d 544,
546-48 (Tex. App.-Waco 1994, no writ) (affirming commission's decision reducing indefinite
suspension to temporary thirty-six day suspension); Firemen's & Policemen's Civil Serv. Comm'n
v. Shaw, 306 S.W.2d 160, 164 (Tex. Civ. App.-San Antonio 1957, writ ref'd n.r.e.) (reversing
district court's judgment setting aside commission's decision reducing indefinite suspension to
temporary eight month suspension and affirming commission's decision).

 Leal points out that none of these decisions expressly addresses the issue he presents in this
appeal - whether the authority to reduce an indefinite suspension is limited to a temporary suspension
of less than thirty days. However, the fact that none of these decisions addresses whether there is such
a restriction is not authority for the existence of such a restriction. Indeed, the fact that the none of
the officers involved in these cases raised the issue suggests such a restriction does not exist. Leal also
supports his argument that a restriction exists by citation to section 143.052(b) of the Texas Local
Government Code, which provides as follows:

 The head of the fire or police department may suspend a ... police officer under the
department head's supervision or jurisdiction for the violation of a civil service rule.
The suspension may be for a reasonable period not to exceed 15 calendar days or for
an indefinite period. An indefinite suspension is equivalent to dismissal from the
department.


Tex. Local Gov't Code Ann. § 143.052(b) (emphasis added). By its terms, however, this provision
restricts the authority of the heads of the fire and police departments, not the commission or, by
extension, an independent hearing examiner. Leal also cites article 23, section 1 of the Collective
Bargaining Agreement, which provides as follows:

 The Chief shall have the authority to demote, temporarily suspend (not to exceed 30
calendar days), or indefinitely suspend any employee for any causes set forth in the
Rules and Regulations of the Civil Service Commission. 


Again, however, this provision restricts the authority of the police chief, not the commission or an
independent hearing examiner.

 In short, section 143.053(f) of the Texas Local Government Code expressly permits the civil
service commission (and therefore a hearing examiner) to "order a reduction in the period of
suspension"; no provision of the code or interpretative case law of which we are aware limits this
power; and neither section 143.052(b) of the Texas Local Government Code nor article 23, section
1 of the Collective Bargaining Agreement even purports to do so. We therefore hold the commission
(and therefore a hearing examiner) may reduce an indefinite suspension to a temporary suspension
in excess of thirty days. Accordingly, the trial court erred in granting Leal's motion for summary
judgment and in denying the City's and Dovalina's on Leal's claim that the hearing examiner lacked
the jurisdiction and authority to reduce Leal's indefinite suspension to a temporary 644-day
suspension without pay.

Qualified Immunity


 Dovalina next argues the trial court erred in denying his motion for summary judgment on
Leal's substantive and procedural due process claims on the ground of qualified immunity. (3) We again
agree.

 "The well-established test for qualified immunity requires us to engage in a two-step inquiry."
Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir.), cert. denied, 525 U.S. 872 (1998). "First, we must
determine whether a public official's conduct deprived a § 1983 plaintiff of a 'clearly established'
constitutional or statutory right." Id. Second, if the public official violates a person's civil rights, we
must determine whether the official's conduct was objectively reasonable. Id. at 467. "Whether an
official's conduct is objectively reasonable depends upon the circumstances confronting the official
as well as 'clearly established law' in effect at the time of the official's actions." Id. Leal's substantive
due process claim fails the first step of this inquiry, while his procedural due process claim fails the
second.

Substantive Due Process


 Leal alleged that his right to substantive due process was violated by the conduct of the
Internal Affairs investigators and the composition of the Disciplinary Review Board that
recommended indefinite suspension. However, an inadequate or invalid investigation is insufficient
to state a civil rights claim unless another recognized constitutional right is involved. See, e.g.,
Andrews v. Fowler, 98 F.3d 1069, 1079 (8th Cir. 1996). And Leal's complaint regarding the
composition of the Disciplinary Review Board rests upon the incorrect assumption that he was
entitled to an impartial decisionmaker. See Schaper v. City of Huntsville, 813 F.2d 709, 715-718 (5th
Cir. 1987) (holding that due process does not require the state to provide an impartial decision-maker
at the pretermination hearing where post-termination remedies are available). We therefore hold
Leal's substantive due process claim fails to allege the denial of a constitutional right, "clearly
established" or otherwise. Accordingly, the trial court erred in denying Dovalina's motion for
summary judgment on this claim on the ground of qualified immunity.

Procedural Due Process


 In his procedural due process claim, Leal contends Dovalina violated his right to procedural
due process by failing to provide him with pretermination due process. Dovalina concedes that Leal
has a property right in his continued employment and appears to concede that, as a general rule, a
police officer is entitled to notice of the charges and an opportunity to respond before he is
suspended. See Bexar County Sheriff's Civil Serv. Comm'n v. Davis, 802 S.W.2d 659, 662 (Tex.
1990), cert. denied, 502 U.S. 811 (1991) (holding that, before an employer may terminate an
employee who has a property right in continued employment, "the employer must furnish the
employee with 'oral or written notice of the charges against him, an explanation of the employer's
evidence, and an opportunity to present his side of the story'" (quoting Cleveland Bd. of Educ. v.
Loudermill, 470 U.S. 532, 546 (1985)). But, Dovalina argues, his "conduct was objectively
reasonable in light of the circumstances of this case." We agree.

 The hearing examiner found that Dovalina prepared and attempted to have Leal served with
the letter of suspension; but Leal was "off work due to illness," and his family members "would not
give Department representatives any information about his status or when they expected him to
return." Nor would Leal's family members "accept the letter on ... Leal's behalf." In short, as the
hearing examiner found, "Leal's family prevented Department representatives from serving the letter
of indefinite suspension." We are bound by these findings. See Longoria, 2004 WL 2098074, at *1
(noting that hearing examiner's decision is final and binding and citing Tex. Local Gov't Code
Ann. § 143.057(c)). And these circumstances, coupled with the requirement in section 143.052(h)
of the Texas Local Government Code that Dovalina file the "original written statement and charges"
against Leal by April 25, 2001 or be barred from ever doing so, render Dovalina's failure to provide
Leal with either a pretermination notice of the charges or a hearing "objectively reasonable." Our
conclusion is buttressed by the fact that the administrative process afforded Leal notice of the charges
against him, an opportunity to respond to these charges, and a hearing. See Macklin v. City of New
Orleans, 293 F.3d 237, 241 (5th Cir. 2002) (per curiam), cert. denied, 537 U.S. 1159 (2003).

 In Macklin, Macklin, a suspended city police officer, was arrested on May 6, 1999 for
aggravated battery. Id. Shortly thereafter, on May 10, 1999, Macklin was suspended for 180 days.
Id. at 239. "An internal investigation by the Department's Public Integrity Division found that
Macklin was the aggressor in the incident," "was repeatedly untruthful to investigators," and failed
"to offer any mitigating evidence at a disciplinary hearing." Id. Macklin "was therefore dismissed from
the police force on February 18, 2000." Id. Macklin appealed his dismissal to the Civil Service
Commission, which held "two hearings on [his] appeal, at which he was represented by counsel" and
then "upheld [his] dismissal." Id. In his subsequent suit against the city, the police chief, and the
mayor, Macklin alleged, among other things, "that his due process interests in property and liberty
were violated by the absence of a pre-suspension hearing and the denial of a name clearing hearing."
Id. at 241. The Fifth Circuit Court of Appeals disagreed, holding that Macklin had failed to establish
a due process violation because he "was given multiple opportunities to rebut the charges against him,
and was represented by counsel during this stage of the administrative process." Id. So it is in this
case.

 It is undisputed that Leal received notice of the charges against him and an opportunity to
respond during the two investigations by the Internal Affairs Division, the two hearings before the
Disciplinary Review Board, and the eighteen-day hearing before the hearing examiner. In short, like
Macklin, Leal was afforded notice of the charges against him and several opportunities to respond
and was in fact represented by counsel during the hearing before the hearing examiner. In light of this
record, the facts found by the hearing examiner, particularly when viewed through the lens of
Macklin, conclusively establish that Dovalina's conduct was objectively reasonable under the
circumstances. Accordingly, we hold the trial court erred in denying Dovalina's motion for summary
judgment on Leal's procedural due process claim on the ground of qualified immunity.

Conclusion


 Because the hearing examiner had the jurisdiction and authority to reduce Leal's indefinite
suspension to a 644-day temporary suspension without pay, we reverse the trial court's summary
judgment in Leal's favor in Cause No. 2003-CVQ-001720-D2 and render judgment reinstating the
hearing examiner's decision. And, because Dovalina established his qualified immunity from Leal's
procedural and substantive due process claims, we reverse the trial court's summary judgment in
favor of Leal in Cause No. 2001-CVQ-000765-D2 and render judgment in Dovalina's favor.
However, we do not have jurisdiction over the City of Laredo's appeal in Cause No. 2001-CVQ-000765-D2 and therefore dismiss the City's appeal. See Bexar County v. Giroux-Daniel, 956 S.W.2d
692, 695 (Tex. App.-San Antonio 1997, no pet.) (holding "a local government sued under § 1983
has no immunity even if its employee is entitled to qualified immunity"; and the court of appeals does
not have jurisdiction over the local government's interlocutory appeal). Leal's substantive and
procedural due process claims against the City of Laredo therefore remain pending in the trial court.
We are confident the trial court will proceed in a manner consistent with this opinion.


 Sarah B. Duncan, Justice
1. After the second Disciplinary Review Board concluded on April 9, Leal took three hours of sick leave. He
was under his doctor's care from April 10 through April 15, took five hours of sick leave on April 10, and took eight
hours of sick leave on April 11; he was off on April 12 and 13 and took eight hours sick leave on April 14 and another
eight hours of sick leave on April 15. On April 16, his doctor released him to work; however, from April 16 through
April 25, Leal was on annual leave, which he requested in April from J.L. Martinez, rather than from his immediate
supervisor, Assistant Chief Eliodoro Granados. At the time Leal asked to take his annual leave, he knew the first
Disciplinary Review Board had recommended that he be indefinitely suspended and that Dovalina would have to act
on the Board's recommendation no later than April 25 or 26. But, when asking Martinez if he could take his annual
leave from April 16 to April 25, Leal did not advise Martinez of the significance of the April 25 or 26 date.
2. We have jurisdiction to review the trial court's summary judgment on Leal's claim that the hearing examiner
lacked the jurisdiction and authority to suspend Leal without pay or benefits from April 24, 2001 to February 16, 2003,
because this judgment was rendered final and appealable by a severance order. See, e.g., Lehmann v. Har-Con Corp.,
39 S.W.3d 191, 195 (Tex. 2001) ("the general rule, with a few mostly statutory exceptions, is that an appeal may be
taken only from a final judgment).
3. Our jurisdiction over Leal's procedural and substantive due process claims extends only to the trial court's
order denying of Dovalina's motion for summary judgment on the ground of qualified immunity. See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(5) (Vernon Supp.2004) (expressly permitting appeal from order denying motion for
summary judgment based on assertion of immunity by individual who is an officer or employee of the state or a political
subdivision of the state). We therefore do not address the parties' arguments on the merits of these claims.